SHWARTZ, Circuit Judge,
dissenting.
Mindful of the deference we owe to the District Court under the applicable standard of review and the test for obtaining a stay, I part company with the Majority and would affirm the District Court’s order denying IDEA’S motion for a stay of the sale order pending appeal.[1] First, I disagree with the Majority’s new interpretation of the requirements for obtaining a stay. Second, I conclude that the District Court thoroughly considered the entire record and all of the relevant factors and acted within its discretion when it held that the requirements to obtain a stay had not been satisfied.[2]
The Majority’s “sliding scale” approach for obtaining such equitable relief fails to honor our precedent’s conjunctive four-part test to obtain a stay and it would permit relief to be granted upon a partieu- *576 larly strong showing on just a single factor, apparently even if at least one factor weighs against the movant. To obtain a stay pending appeal, a movant must demonstrate all four of the following elements: (1) that it is likely to succeed on' the merits; (2) that irreparable harm will occur in the absence of a stay; (3) that granting the stay will not result in greater harm to other parties; and (4) that the public interest favors a stay. Hilton v. Braunskill, 481 U.S. 770, 776, 107 S.Ct. 2113, 95 L.Ed.2d 724 (1987); Jackson v. Danberg, 656 F.3d 157, 162 (3d Cir.2011); Republic of Phil. v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir.1991). Notwithstanding whatever extent to which these factors may be “balanced” against one another such that a relatively stronger showing on one may excuse a relatively weaker, but still extant, showing on another, a complete failure to satisfy any one of these factors precludes a stay.[3] See, e.g., NutraSweet Co. v. Vit-Mar Enters. Inc., 176 F.3d 151, 153 (3d Cir.1999) (“A plaintiffs failure to establish any element in its favor renders a preliminary injunction inappropriate.”); Opticians Ass’n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 192 (3d Cir.1990) (“Only if the movant produces evidence sufficient to convince the trial judge that all four factors favor preliminary relief should the injunction issue.”); ECRI v. McGraw-Hill, Inc., 809 F.2d 223, 226 (3d Cir.1987) (vacating preliminary injunction based on “dispositive” failure to satisfy one of the four factors).
Contrary to the Majority’s assertion, requiring a movant to satisfy each factor is not unfair. Indeed, it is warranted; Equitable relief, including injunctions and stays, is an extraordinary remedy, Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008), and movants must accordingly meet a high bar to obtain it. Here, that means the movant must satisfy all four requirements to obtain a stay. See N.J. Hosp. Ass’n v. Waldman, 73 F.3d 509, 512-13 (3d Cir.1995) (stating that an “injunction shall issue only if the plaintiff produces sufficient evidence to convince the district court that all four factors favor preliminary relief’) (quoting Merchant & Evans, Inc. v. Roosevelt Bldg. Prods., 963 F.2d 628, 632-33 (3d Cir.1992)). The Majority’s test weakens this conjunctive test and makes it possible to, for example, obtain a stay or injunction simply because a party has made a strong showing on the merits, even though the harm that may befall it is compensable with money. This possibility is contrary to our precedent, which also requires an applicant seeking injunctive relief to show irreparable harm. Frank’s GMC Truck Center, Inc. v. Gen. Motors Corp., 847 F.2d 100, 102 & n. 3 (3d Cir. *577 1988). Thus, the Majority’s approach makes it more likely that what should be an extraordinary remedy will be afforded on a more ordinary basis.[4] For these reasons, we should not adopt the Majority’s version of the sliding scale approach insofar as it excuses total failure to satisfy any one of the four factors, and we should continue to apply the four-factor test entrenched in binding precedent. If proof of each factor is adduced, then a district court can and should carefully consider each factor, accord each the weight it believes appropriate in the particular case, and determine whether, on balance, the extraordinary relief sought should be granted.
That is exactly what the District Court did here. The District Court carefully considered each of the factors and did not abuse its discretion in determining that none were satisfied. First, the District Court astutely acknowledged that if the sale proceeded, IDEA would be no worse off than it was at the time it made its request for relief. It was not clearly erroneous for the District Court to find, based on the facts before it, that IDEA was not conducting any business because Revel was closed, and that IDEA would be unable to conduct business if the sale fell through and Revel remained closed.[5] It also was not clearly erroneous for the District Court to surmise that IDEA would likely not reopen its business if the sale proceeded, and thus that allowing the sale to proceed would cause it no additional harm. Moreover, any injury to IDEA would be compensable with money.[6] While collection may prove challenging, this hurdle is no different from that facing any other unsecured creditor.
Second, it was not clearly erroneous for the District Court to conclude that staying the sale would likely cause greater harm to others, including the estate and other creditors. Each month without a sale generated millions of dollars in carrying costs to maintain the closed facility. These expenditures depleted Revel’s assets and the District Court correctly observed that a prompt sale would end these expenditures. Moreover, the sale would provide an immediate opportunity to obtain assets for the estate, which it could then use to begin to repay its creditors. Thus, it was reasonable for the District Court to conclude that a prompt sale would both preserve existing and generate additional estate assets, whereas staying the sale would continue to dissipate estate funds and, at a minimum, delay the collection of additional assets. Given Revel’s substantial challenges in finding a prospective buyer, it was far from idle speculation for Revel to fear that the loss of this buyer would significantly delay its ability to satisfy its creditors. For these reasons, the District Court acted within its discretion in denying the stay, as a stay would likely cause greater harm to others than the absence of a stay would cause IDEA.[7]
*578 Third, the District Court had a sound basis to conclude that granting the stay would not be in the public interest. As stated above, Revel faced difficulties securing a buyer, and having one in hand would certainly serve the public interest. At the time, it appeared that allowing the sale to proceed quickly would lead to the reopening of a large facility, which had employed (and would likely again employ) thousands of people. Thus, as even the Majority concedes, the sale presented the opportunity for numerous jobs in an economically depressed community. The District Court thus did not err in finding that denying the stay is in the public interest.
Finally, although the preceding analysis makes it unnecessary to reach this factor, I would hold that the District Court also appropriately concluded that IDEA did not demonstrate a strong likelihood of success on the merits, notwithstanding the Majority’s assertion that success on the merits was “all but assured.” Since the Majority has focused only on IDEA’S argument that the Bankruptcy Court erred in holding that Revel met one of 11 U.S.C. § 363(f)’s conditions to sell its assets free and clear of IDEA’S lease, I will likewise focus on this issue.
Under 11 U.S.C. § 363(e), an entity with “an interest in property” that is proposed to be sold can request the bankruptcy court to “prohibit or condition such ... sale ... as is necessary to provide adequate protection of such interest.” 11 U.S.C. § 363(e). The trustee,' however, may sell the property “free and clear” if, among other things, “such interest is in bona fide dispute.” 11 U.S.C. § 363(f)(4). The issue before the District Court was whether the record before it supported a finding that there was a bona fide dispute about whether IDEA had a leasehold interest in the space it occupied at Revel.
The Majority discounts the propriety of relying on IDEA’S request for a declaratory judgment that it had a nonresidential lease as reflecting a bona fide dispute. While requesting a declaratory judgment alone does not automatically mean a bona fide dispute exists, the District Court here acted within its discretion to find a bona fide dispute existed based on the pleadings and the declaratory judgment IDEA sought. A declaratory judgment action asks a court to “declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.” 28 U.S.C. § 2201(a). When determining whether to exercise jurisdiction under § 2201, a district court is to consider, among other things, “the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy.” Reifer v. Westport Ins. Corp., 751 F.3d 129, 140 (3d Cir.2014) (internal quotation marks omitted). Thus, it is fair to infer that, if a party seeks a declaratory judgment, it believes there is a dispute about a matter regarding which it seeks certainty. Here, IDEA wanted to secure relief under § 363(e). To do so, it needed a property interest. Aware that Revel may attempt to characterize IDEA’S interest as a management agreement or partnership rather than a leasehold interest, it sought court intervention. These events provided the District Court with sufficient grounds to find that there was a strong likelihood that Revel would establish that there was a bona fide dispute about IDEA’S interest in the property. While the Majority questions whether the dispute was indeed bona fide based upon *579 the language of the lease agreement (and the Bankruptcy Court’s finding months later concerning the lease), I cannot say that the District Court abused its discretion in relying on IDEA’S own pleadings, which arguably conveyed its concern that Revel may dispute its interest.[8]
For these reasons, the District Court appropriately found that IDEA failed to satisfy any of the requirements needed to obtain a stay, and I would affirm the District Court’s order denying the motion to stay the sale pending appeal.

. As we must limit our review to the District Court’s decision based on the facts it had before it at the time, I do not — and cannot— consider events that arose thereafter.

. Additionally, I would reach the issue of our jurisdiction under 28 U.S.C. § 1292(a)(1) and conclude that we do have jurisdiction under that statute. See Jackson v. Danberg, 656 F.3d 157, 163 (3d Cir.2011) (asserting appellate jurisdiction over the denial of a stay or injunction).

. The Majority suggests that this Court has endorsed a sliding scale approach in Constructors Association of Western Pennsylvania v. Kreps, 573 F.2d 811 (3d Cir.1978) and Delaware River Port Authority v. Transamerican Trailer Transport, Inc., 501 F.2d 917 (3d Cir.1974). As noted in the text, however, this Court has repeatedly emphasized that all four factors must be independently satisfied to justify the grant of preliminary equitable relief, and the Supreme Court has presented the four-factor test as conjunctive, meaning that all four factors must be satisfied to obtain a stay. See, e.g., Hilton, 481 U.S. at 776, 107 S.Ct. 2113. Further, even to the extent that these cases can be read to embrace a "sliding scale” or "balancing” approach (which I do not necessarily view as equivalent); neither states or implies that a movant’s complete failure to satisfy any of the four factors can be excused. See Kreps, 573 F.2d at 815 (suggesting an injunction might be appropriate even where the movant "did not demonstrate as strong a likelihood of ultimate success as would' generally be required” if each of the other factors "strongly favor[s] the moving party” (emphasis added)). In my view, an essential prerequisite to “balancing” the factors is the requirement that proof of each factor be presented and hence can be placed on the scale.

. In fact, in this case, the Majority granted a stay even though it concluded that the public interest factor favored the non-movant, and thus the four-factor test was not met.

. The analysis might be different if the facility was accessible and the lessee was operating, in which case a sale free and clear of its interest could disrupt its business. This, however, is not the case here.

. I recognize that, in exceptional circumstances, economic loss that threatens a mov-ant’s business can constitute irreparable harm sufficient to enjoin an action that poses such a threat, Minard Run Oil Co. v. U.S. Forest Serv., 670 F.3d 236, 255 (3d Cir.2012), but no evidence was presented to show that the sale will cause such a loss. This is not surprising because it was Revel's closing, and not its sale, that caused IDEA'S inability to operate.

.Moreover, granting IDEA a stay would allow it to interfere with the orderly collection and distribution of assets and impact other *578 creditors. IDEA is an unsecured creditor and, in the normal course, would have to await satisfaction of obligations to the secured creditors before it could be compensated. The stay would enable IDEA to catapult ahead of all other creditors, and place itself in a position to demand satisfaction before them.

. The Majority also notes that the Bankruptcy Court did not make explicit findings concerning the conditions needed to adequately protect IDEA’S possessory interest. Even assuming that its analysis lacked precision, this alone does not mean that the District Court abused its discretion in denying the stay,